```
 UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ALPINE FRESH, INC.,                                 :
                                                    :
        Plaintiff,                                  :
                                                    :        10 CV 8279 (HB)
        - against -                                 :
                                                    :        OPINION & ORDER
                                                    :
M/V CAP ITAIM, her engines, boilers,                :
etc.,  and COMPANIA LIBRA DE                        :
NAVEGACAO (URUGUAY) S.A. and HAMBURG                :
SUDAMERIKANISCHE DAMPFSCHIFFAHRTS-                  :
GESELLSCHAFT KG d/b/a HABURG-SUD,                   :
and BLUE ANCHOR LINE d/b/a KUEHNE                   :
+ NAGEL,                                            :
                                                    :
        Defendants.                                 :
------------------------------------------------------------------------x
```

**Hon. Harold Baer, Jr., District Judge:**

       This motion for summary judgment by Defendant Compania Libra de Navegacao (Uruguay) S.A. ("Libra") constitutes the balance of this litigation. Plaintiff Alpine Fresh, Inc. ("Alpine") initially brought this F.R.C.P. 9(h) maritime claim against Libra and other defendants, who have since settled.[1] The complaint alleges that 28 containers of Alpine's mangoes were damaged due to Libra's negligence. For the reasons that follow, Libra's motion is GRANTED.

### I.   Background[2]

       In 2009, Alpine made agreements with three ocean carriers, one of whom was Libra, to transport its mangoes from Brazil to the United States. Pl.'s Rule 56.1 ¶ 4.[3] Alpine did not have a direct agreement with Libra. *Id.* at ¶ 5. Rather, Navitrade, a Brazilian freight forwarder, included Alpine in an agreement between Navitrade and Libra to use slots reserved by Navitrade on Libra vessels. *Id.* Navitrade received a commission from Libra for each container that it booked for shipment under this agreement. *Id.* ¶ 4.

       The Bill of Lading is the governing contract between Alpine and Libra. The terms of the Bill of Lading state that: "If perishable Goods requiring special temperature are delivered to the Carrier in a refrigerated container, the Merchant undertakes that the Goods have the temperature

---

[1] Alpine has settled claims with Blue Anchor Line and Hamburg-Sud. Pl.'s Rule 56.1 ¶ 4.
[2] Unless otherwise noted, the facts in this section are not in dispute.
[3] In 2009, Alpine do Brasil, S.A., the shipper, was owned in part by Alpine Fresh, Inc. Pl.'s Rule 56.1 ¶ 4. For purposes of this opinion, the two entities are interchangeable.

provided on the face hereof and that they have been properly stowed and the thermostatic controls have been properly set by him before delivery of the Goods to the Carrier." Def.'s Rule 56.1, Ex. D ¶ 12 Bill of Lading Terms and Conditions.  The Bill of Lading further states, "[T]he Carrier shall be under no liability whatsoever for loss or damage to the Goods howsoever occurring, when such loss or damage arises prior to the loading on or subsequent to the discharge from said Vessel(s). . . . In making arrangements for transshipment and/or forwarding, the Carrier shall (and is hereby authorized to) act only as AGENT of the MERCHANT." *Id.* ¶ 9.

Alpine alleges that the mangoes were damaged when they were exposed to high temperatures during the 15 to 18 hours of trucking from Petrolina to the load port of Saupe. Def.'s Rule 56.1 ¶ 4.  Alpine speculates that Libra was responsible for "selecting the inland Brasil truckers" and for paying them. Pl's Rule 56.1 ¶¶ 12, 13.  Libra states "unequivocally" that it was not responsible for arranging the trucking. Def.'s Rule 56.1 ¶ 6.

The Bill of Lading indicates that the "transport service" is "CY/CY" or "container yard to container yard," meaning that the containers were to be received and delivered at ocean marine terminals used by Libra. Def.'s Rule 56.1, Ex. C Bill of Lading.  The box for any precarriage activities undertaken by Libra is blank. *Id.*

## II.   Discussion

### A.  Legal Standard

A motion for summary judgment must be granted if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" dispute of fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  A court must resolve all ambiguities and draw all inferences against the moving party. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005).  "If a party fails to properly support an assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Additionally, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The United States Carriage of Good by Sea Act ("COGSA") applies to "[e]very bill of

lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade." 46 U.S.C. § 1300.  Federal law preempts other claims arising under the bill of lading. *See GFT U.S.A. Corp. v. M/V Exp. Freedom*, 1996 A.M.C. 1882, 1895 (S.D.N.Y. 1995).  The COGSA plaintiff "has the burden, which remains with it throughout the case, of proving that 'the goods were damaged while in the carrier's custody.' "  *Caemint Food, Inc. v. Brasiliero*, 647 F.2d 347, 351 (2d Cir. 1981) (quoting *Pan Am. Hide Co. v. Nippon*, 13 F.2d 871 (S.D.N.Y. 1921)).

> **B. There is no genuine issue of material fact regarding whether Libra bore responsibility for the inland trucking.**

Alpine argues that Libra had "total control" over the inland transport of the mangoes. Pl's Opp. 12.  Libra states that it "did not hire or appoint the truckers or otherwise arrange for the inland transport in Brazil." Def.'s Mot. Summ. J. 11.  Viewing the facts in a light most favorable to Alpine, and assuming Alpine is correct that Libra was responsible for the inland transport, Libra is still entitled to summary judgment.[4]

The bill of lading governs the contract between the parties with respect to any shipment under COGSA, and "Each term has in effect the force of a statute, of which all effected must take notice." *S. Pac. Transp. Co. v. Commercial Metals*, 456 U.S. 336, 342-43 (1982); *see also GSI Grp., Inc. v. Zim Integrated Shipping Services, Ltd.*, 562 F. Supp. 2d 503, 506 (S.D.N.Y. 2008) ("Bills of lading are contracts between shippers and carriers that expressly set forth the carrier's obligations for delivering specific goods.").  The Second Circuit has recognized that the bill of lading is "an effective means for carriers to limit their liability." *Ins. Co. of N. Am. v. S/S Am. Argosy*, 732 F.2d 299, 304 (2d Cir. 1984).

The bill of lading provided that Libra was under "no liability whatsoever" 1) for damage occurring prior to its arrival on or subsequent to its discharge from the vessel, 2) for damage due to improper temperature settings prior to arrival on the vessel and 3) by stating that if Libra arranged for shipping, it was acting only as Alpine's agent. Def.'s Rule 56.1, Bill of Lading Terms and Conditions, Ex. D ¶¶ 9, 12.  Even if Libra arranged for the truckers responsible for damaging Alpine's mangoes, as Alpine alleges, the bill of lading effectively limited Libra's liability to the period on board the vessel. *Outboard Marine Int'l, S.A., v. S.S. Am. Lancer*, 1976 A.M.C. 1839 (S.D.N.Y. 1976) (finding "plaintiff has failed to make a *prima facie* case against

---

[4] The bulk of the parties' briefs are devoted to arguing over whether or not Libra arranged for the shipping.  I need not decide who is correct because as a matter of law, Libra is entitled to summary judgment even if Libra did arrange for the shipping.

USL" where nearly identical language appeared in the bill of lading); *see also J.R.J. Enters., Inc. v. M/V CCNI Cartagena*, No. 08 Civ. 3473 (GBD), 2010 WL 5538516, at *4 (S.D.N.Y. Dec. 29, 2010) ("[T]he Bill of lading makes clear that Defendants were not responsible for maintaining the container's temperature once the container left the ship."). The Bill of Lading indicates that the transport service is "CY/ CY," or "container yard to container yard," meaning Libra's custody and control begins at the port of loading and ends at the port of discharge and the damage here was caused on the way to the port, not at the yard. *See Am. Home Assurance Co. v. Zim Jamaica*, 418 F. Supp. 2d 537, 2006 A.M.C. 1148, 1150 (S.D.N.Y. 2006).

Summary judgment in a contract dispute is appropriate "where the agreement's language is unambiguous and conveys a definite meaning." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GMBH*, 446 F.3d 313, 316 (2d Cir. 2006) (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993)) (finding the language in the bill of lading "clear and unambiguous"). Because the language here is clear and unambiguous, summary judgment in Libra's favor is appropriate.

### C.  Plaintiff's Remaining Arguments Are Without Merit

Alpine's second major argument is that the bill of lading was a contract of adhesion and that Libra should not be permitted to shield itself from liability thereby. However, the cases cited by Alpine are clearly distinguishable from the case at hand. In *Cabot Corp. v. S/S Mormacscan*, 441 F.2d 476, 478 (2d Cir. 1971), the court noted that because the bill of lading was a contract of adhesion, it "must be strictly construed." In that case, the terms of the bill of lading were ambiguous as to whether the contractual benefit extended to a third party, and the Second Circuit consequently construed them against the drafting party. There is no such ambiguity in this contract.

Because Alpine brought suit under the Libra Bills of Lading, Alpine is bound by their terms. *Coutinho & Ferrostaal, Inc. v. M/V Spar Taurus*, No. 09 Civ. 9672 (BSJ), 2010 U.S. Dist. LEXIS 83645, at *5-6 (S.D.N.Y. Aug. 16, 2010) ("[B]y suing under the bills of lading, Plaintiff has accepted their terms."). The clear terms of the Bill of Lading limited Libra's liability in exactly the situation Plaintiff argues occurred, one where Libra arranged for inland trucking.

Alpine also argues that it would violate Alpine's "reasonable expectations" if Libra were not held responsible for trucking that it arranged. Pl.'s Opp. 13. Again, this argument is unavailing because the terms of the bill of lading were perfectly clear.

In an unauthorized sur reply, Alpine attempts to submit further proof that Libra paid for and arranged the trucking. For the reasons stated above, no genuine issues of material fact are raised by this sur reply.

The Court has considered Alpine's remaining arguments and finds them without merit.

### III. Conclusion

Libra's motion for summary judgment is GRANTED and the Complaint is dismissed. The Clerk of the Court is instructed to close all open motions and remove this case from my docket.

SO ORDERED.

October 11, 2011
New York, New York

Hon. Harold Baer, Jr.
U.S.D.J.